# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### MAY TERM, 1870.

COURSEN *vs.* CANFIELD and VAN SYCKLE.

1. The failure of a mortgagee to keep his covenant to procure certain releases, is no defence to a suit for a foreclosure of the mortgage, where the mortgagor agreed to pay the money at a certain time absolutely, and not on condition that the releases had been procured.

2. It does not affect the question, that the suit is brought by a *bona fide* purchaser of the mortgage for a valuable and full consideration, without notice of this covenant. He holds it subject to every equity and defence to which it was subject in the hands of the mortgagee.

3. Courts of equity will not give to such independent covenants an effect different from their legal effect, or turn independent covenants into conditional, because it will give better protection to a party, or diminish litigation.

The cause was brought to final hearing, upon the pleadings and proofs.

*Mr. Coult*, for complainant.

The bill in this cause was filed to foreclose a mortgage given by John Canfield to Andrew W. Shaw, January 2d, 1866, to secure the payment of $2518.34, of which $1000 was due April 1st, 1866, $1000 April 1st, 1867, and the balance April 1st, 1868, with interest, payable April 1st,

Coursen *v.* Canfield and Van Syckle.

1866, and annually thereafter. Canfield, the mortgagor, paid Shaw, the mortgagee, five days after its execution, on the mortgage, $215.59, and he paid the interest in full to April 1st, 1867. The whole balance was due before the bill was filed.

On the 5th day of October, 1868, the mortgage was assigned by Andrew W. Shaw, the mortgagee, to Arminda Coursen, the complainant. The premises covered and conveyed by the mortgage, are situate in the townships of Green and Stillwater, in the county of Sussex, and were sold by Canfield, the mortgagor, to George L. Van Syckle, the other defendant, on the 21st of December, 1868, and he assumed to pay complainant's mortgage as part of the purchase money.

The defendants seek to avoid the payment of the money, and the foreclosure of the mortgage, on the following grounds: 1st. They allege that the mortgage was given by said Canfield to said Shaw, to secure a part of the purchase money for the premises therein described, which, on the day the same bears date, were conveyed by said Shaw and wife to said Canfield, by deed of warranty. 2d. That on the day the said deed was executed and delivered, and the mortgage given, Shaw, the grantor, executed and delivered to said Canfield an agreement in writing, and under seal, whereby he bound himself to procure and deliver to said Canfield certain releases, the better to secure the title to the premises he had conveyed, and that Shaw has broken his covenants in this agreement contained. 3d. The defendant, Canfield, alleges that at the same time the written agreement was executed, Shaw, the mortgagee, *verbally* agreed with him that no part of the principal of the mortgage should be payable, until he had performed his written agreement. 4th. They allege that at the time Canfield conveyed to Van Syckle, he represented to Van Syckle that no part of the principal of complainant's mortgage was to be paid, until the releases mentioned in the agreement between Canfield and Shaw had been procured by Shaw, and that Van Syckle assumed to pay

complainant's mortgage on that express understanding. 5th. That they are advised by their counsel, that the title of Shaw, the grantor, and mortgagee to the premises conveyed by him to Canfield, and covered by complainant's mortgage, is a *determinable fee*, and set forth portions of the wills of Robert C. Shaw, the father of said Andrew, and of Andrew his uncle, from whom they claim said Andrew W. Shaw derived his title to the premises in question, to show that this opinion is correct. 6th. They allege that Shaw, the mortgagor, has removed from the state, and that he is not responsible.

These comprise all the *material* allegations contained in the defendants' answer. Do they constitute a defence to this suit? It is submitted they do not.

1st. Because, if the pretended oral agreement was made, and that, with the written agreement, would constitute an equitable defence as against Shaw, the mortgagee and grantor, they would not against a *bona fide* assignee.

A written or oral agreement made at the same time the mortgage was given, or subsequently, changing, limiting, or defeating the mortgage, of which the assignee had no notice, *actual* or *constructive*, to which the mortgagor was a party, would not affect the right of the assignee. It is a *fraud* upon an innocent purchaser, against which equity will not give him relief.

2d. Because, these allegations together amount only to an allegation of an outstanding title, or a defective title, and of covenants broken ; and where there has been no eviction or ejectment brought, no such defence can be set up against a foreclosure suit, even by the *mortgagor. Long's Adm'r* v. *Long,* 1 *McCarter* 462.

3d. The complainant having taken the mortgage *bona fide,* before the sale of the premises by Canfield to Van Syckle, if the title is defective, or even if it had failed, this defence cannot be made. The remedy of Van Syckle would be against his grantor, on his covenants. *Smallwood* v. *Lewin,* 2 *Beas.* 123.

4th. The written agreement executed by Shaw, was given to secure Canfield against some possible contingency, or supposed infirmity in Shaw's title. It is a distinct and independent covenant, in no wise connected with the deed of conveyance, and, as to it, the personal responsibility of Shaw. The damage which *Canfield* may suffer from a breach of this agreement *if any*, are unliquidated and uncertain, and cannot be ascertained *now*, or in *this suit*. *Long's Adm'r* v. *Long, supra.*

5th. The alleged *oral* agreement set up in the answer, is *not* proved, but on the contrary, is disproved; no such agreement was ever made.

6th. There is no proof that Shaw, the covenantor, is not responsible, and able to respond to any judgment for damages, which may be recovered against him.

If, however, the question of *title* can be considered, if it be considered that such a defence can be set up, then we contend that the title in Shaw at the time the mortgage was given, was a fee simple, *indefeasible.*

1st. Although by the will of Robert C. Shaw, from whom title to part of the premises conveyed by Shaw to Canfield and covered by the complainant's mortgage, was derived, the *fee* given to the sons was limited by executory devise to the survivors; by the codicil executed nearly *seven* years later, this limitation or condition was removed, and the lands which came to Andrew Shaw and his brothers, from the father, which form a part of the premises conveyed by said Andrew to Canfield, were devised to them in severalty and in *fee simple, absolute.* The intention of the testator in this respect is clear, and this will govern in the construction. *Redf. on Wills* 359, § 27; *Smith* v. *McChesney*, 2 *McCarter* 359.

2. By the will of Andrew Shaw, deceased, the premises devised to John, Job, George, and Andrew, part of which are covered by this mortgage, were devised subject to a like condition. The entire interest of the brothers, John, Job, and George, in the premises in question, which they had, or

might have had, under the will of Andrew Shaw, deceased, and also under the will of their father, was conveyed to said Andrew W. Shaw before the conveyance made by him to said Canfield, and thus the title to the whole has become *absolute* and perfect.

No damage, therefore, can arise to Canfield, or his grantee, from a breach of Shaw's warranty, or of the covenants in his written agreement .with Canfield.

*Mr. Ludlow McCarter*, with whom was *Mr. Hamilton*, for defendants.

The bill is filed on bond and mortgage given by Canfield to Andrew W. Shaw, assignor of the complainant, for part of the purchase money of lands conveyed by Shaw to Canfield.

The defence is. that the title of Shaw being defeasible, subject to his dying without issue, with remainder over, in that case, to his surviving brother and sisters, (Shaw, at that time, and still, having had no issue,) that it was agreed, therefore, that Canfield should pay part of the purchase money, giving a mortgage for the remainder, and Shaw executed a deed poll, covenanting to perfect the title by procuring deeds of release from those holding these executory interests; that these covenants of Shaw have not been performed; that the defendant is ready and willing to pay the mortgage, but insists, first, that his title should be perfected according to the covenants in the deed poll.

1. The deed, the mortgage, and the deed poll, all bearing the same date, and relating to the same matter, are to be construed together as forming one transaction. 2 *Parsons on Con.* (*5th ed.*) 503, and cases cited in note; *Cornell* v. *Todd*, 2 *Denio* 130; *Flagg* v. *Munger*, 5 *Seld.* 483.

2. The covenants in the deed poll are conditions precedent to the payment of the mortgage, since they go to the whole of the consideration. 1 *Parsons on Con.* (*5th ed.*) 464; *Pepper* v. *Haight*, 20 *Barb.* 429.

(a.) These contingent interests which Shaw, by this deed poll, covenanted to get released to the defendant, were

assignable, and might be released to the owners under the statute of March 14th, 1851, *Nix. Dig.* 149, as well as by the common law. 2 *Washburn on Real Prop.* 367, and cases cited.

(*b.*) The title to the whole of the property was defeasible, and the contract to perfect this title went, therefore, to the whole of the consideration.

(*c.*) The whole transaction shows that it was a contract to convey the entire estate, and the parties could have intended but one thing, *i. e.* that the conveyance of the entire estate should be a condition precedent to the payment of the mortgage. *Roffey* v. *Shallcross*, 4 *Madd. Ch.* 122; 1 *Esp.* 346; *Judson* v. *Wass*, 11 *Johns.* 525.

(*d.*) The performance of these covenants and the conveyance of the entire estate, is thus " a condition going to the essence of the contract;" and the failure to perform this makes a total failure of consideration, and the mortgage given for this consideration of no effect. 2 *Parsons on Con.* (*5th ed.*) 464; *Lucas* v. *Godwin*, 3 *Bing. N. C.* 746.

3. A court of equity, in a case once properly before it, will do all in its power to settle the rights of all the parties justly and equitably, in one decree. *Couse* v. *Boyles*, 3 *Green's Ch.* 212.

(*a.*) The answer of the defendant admits the mortgage, and that he is ready and willing to pay it, as soon as his title to the land is perfected, according to the contract of the mortgagee and the intention of the parties. The bill, on the other hand, contains no such offer to perform on the part of the complainant.

(*b.*) Shaw has not performed his part of the agreement. Defendants' title is as defective now as when these deeds were given, and is liable, at any moment, to be swept from under him. Should this court now compel him to pay the mortgage, and Shaw die without issue, (and he has none now) he would lose his land and be left without a remedy, although having paid its full and entire value. *Shish* v. *Foster*, 1 *Ves.* 88; *Knapp* v. *Lee*, 3 *Pick.* 452.

4. The general rule is conceded, that a court of equity will not entertain, as a defence to a mortgage, defect in title, since it is not the province of this court to go into an investigation of title, settle these issues of fact and law, and determine the title in this collateral way.

The rule must, however, be restrained and interpreted by the reasons upon which it is founded, and such has always been the ruling of our courts. *Coster* v. *Monroe Manf. Co.,* 1 *Green's Ch.* 467; *Couse* v. *Boyles,* 3 *Green's Ch.* 212.

(*a.*) In the former of these cases cited, the defect in title had been proven in an action at law, and was allowed as a defence to the mortgage, the court holding, not that a defect in title was no defence, but that it could not inquire into it. The defect, however, being established elsewhere, it was admitted as an equitable defence.

In the latter case, the defence of a deficiency in the number of acres sold was allowed, the court citing, with approbation, *Coster* v. *Monroe Manf. Co.*

(*b.*) *Here the defect in title was admitted by the seller, and as a part of the terms of the sale he expressly covenants and agrees to cure the defect immediately.* Is not the defect of title, therefore, clearly established, and does not the reasoning of *Coster* v. *Monroe Manf. Co.* apply equally here?

The court is not asked to go into an investigation of the title, but simply to allow it as a defence when it is admitted by the acts and covenants of the mortgagee, and to decree that these covenants, the performance of which was expressly made by the parties a condition precedent to the payment of the mortgage, should first be performed.

(*c.*) The case differs radically from that where a warranty deed only is taken. If a purchaser relies solely upon this, and enters into the enjoyment of the property, so long as he is protected in such enjoyment he clearly should not, and will not be permitted to allege defect in the title, and to set up speculative difficulties as a defence to the mortgage. Here, however, there is something more, *i. e.* the covenants in the deed poll, expressing, both actually and legally, the

intent of the parties that the defect in the title should be cured before the mortgage becomes payable.

5. The assignee of the mortgage (the complainant) stands in the same position as the mortgagee, and took the mortgage subject to all the equities between the assignor and other parties, whether these equities be latent or not. *Conover* v. *Van Mater*, 3 *C. E. Green* 481.

6. The payment of the mortgage should, therefore, be suspended till the performance of the covenants in the deed poll, and the complainant's bill should be dismissed.

THE CHANCELLOR.

The suit is for the foreclosure of an ordinary mortgage. By the terms of it, both principal and interest are due. The defence is, that the mortgage was in part payment of the purchase money of the mortgaged premises, and given at the delivery of the deed; and that at the same time the mortgagee executed a covenant under seal to the purchaser, that he would immediately procure releases of their title from certain persons named, who were reputed to have some claim on the lands. That this covenant was part of the transaction of selling the land, and was in pursuance of the agreement by which the land was purchased, that it would not have been purchased without such agreement, and that the releases have never been procured.

The answer sets up that there was a verbal agreement, that the mortgage should not be due or payable until the releases were procured. But of this there is no proof whatever; the answer is no proof, as in this particular, it is not responsive to the bill, but sets up new matter in avoidance.

The covenant and mortgage must be construed together as part of one transaction, and as if they had been contained in the same instrument. And then the question is resolved into this, would the breach of a covenant by the mortgagee contained in a mortgage, preclude him from foreclosing it? The covenants in this case are independent. The mortgagee agreed to procure the releases forthwith, abso-

lutely. The mortgagor agreed to pay the money at the stipulated time absolutely, and not on condition that the releases had been procured. These are not dependent covenants. If such had been the agreement or understanding, it would have been easy to have made the payment of the money, conditional on the releases being first procured. The mortgagee has a right to say *in hæc fœdera non veni.* He might have been willing to bind himself in a covenant to procure releases, which he knew were of little or no importance, a breach of which, if he should be unable to procure them, would subject him to small damages, but might be unwilling to bind himself to forfeit $2500 of the purchase money, if he could not obtain the releases. The parties could have made the bargain either way. They chose to make, and did make, independent covenants. And there is no principle established in courts of equity, by which an effect will be given to such covenants, different from their legal effect, and independent covenants turned into conditional, because it will give better protection to a party, or will diminish litigation. The failure of the mortgagee to keep his covenant, is no defence to a suit for payment of the mortgage money.

The question is not changed by the fact, that the complainant in this suit, is a *bona fide* purchaser of this mortgage for a valuable and full consideration, without notice of this covenant. He holds it subject to every equity and defence, to which it was subject in the hands of the mortgagee.

The defendant does not set up or rely upon any actual defect in the title, as a defence to this foreclosure. The complainant, by the documentary and parol proof which he has produced, insists upon it that he has shown a good title, and that the releases would be of no value. The defendant insists, that without regard to this, he is entitled to have the releases delivered before he can be called upon to pay the mortgage debt. The view taken by me of the case renders it unnecessary to examine and determine the validity

of the title, but this insistment shows better than any argument, that it would be inequitable to change the covenants of the parties from what they were intended to be.

The complainant is entitled to a decree of foreclosure, and to a sale of the premises.