HARRY A. EVANS, COMPLAINANT–RESPONDENT, v.
ISADORE ROSENBERG AND ANNA ROSEN-
BERG, DEFENDANTS–APPELLANTS.

Argued February 28, 1949—Decided March 28, 1949.

*Mr. Daniel Bell, Jr.* argued the cause for respondent (*Mr. John Rauffenbart* and *Messrs. Kirkman, Mulligan & Harris,* solicitors).

*Mr. Joseph B. Perskie,* argued the cause for appellants (*Mr. William M. Snyder* and *Mr. Charles C. Babcock,* attorneys).

The opinion of the court was delivered by

CASE, J.   The appeal is from a decree in Chancery commanding the removal of portions of a garage building and restraining defendants henceforth from violating enumerated building restrictions.   John Eyre Shaw, the common predecessor in title of the lots involved herein and of other land in the neighborhood, conveyed out by deeds related to a map and containing the following covenants:—

"Under and subject nevertheless to the following restrictions, covenants and conditions which are hereby made a part of the consideration for this conveyance.  *  *  *  That not more than one build-

ing shall be erected upon a single lot as mapped on said plan of lots nor shall any one who shall own more than one lot which may be contiguous, erect more than one building on any single lot as planned. That no building shall be erected nearer the front property line of any avenue or street than fifteen feet, nor nearer to either of the side or rear lines of said lots than three feet, provided that where a party may own two or more contiguous lots then a building may be erected on any part of said lots without regard to the intervening side lines, provided the same is not within the said distance of three feet from the outside lines of said contiguous lots * * *. And it is expressly understood and agreed that the said several covenants above specified shall attach to and run with the land and it shall be lawful not only for the said grantors, their heirs or assigns but also for the owner or owners of any lot or lots adjoining in the neighborhood of the premises hereby granted, deriving title from or through the said grantor, his heirs or assigns, to institute and prosecute at his, her or their own cost any proceedings at law or in equity against any person or persons violating or threatening to violate the same; and that the object of the covenants is to secure the health, beauty, ornamentation and value of the premises. And it is expressly understood and agreed that the foregoing covenants and conditions are accepted and agreed to by the grantor and grantee and shall bind their heirs, executors, administrators or assigns and that any conveyance hereafter made by the grantor or grantors, their heirs, executors or assigns, shall have inserted in the deed or deeds the foregoing covenants and conditions."

By mesne conveyances stemming from the John Eyre Shaw deeds lot number 19 came to Blanche K. Dougherty and lot number 20 to defendant Isadore Rosenberg, whose wife is defendant Anna Rosenberg. Each lot contained a dwelling, with a small detached garage at the rear. Rosenberg's immediate grantor was the Guarantee Trust Company, whose deed to him was, by its terms, "subject, however, to any and all restrictions, if any, of record".

Miss Dougherty died August 27, 1939, seized of lot number 19, leaving a will and a codicil thereto which were admitted to probate by the Surrogate of Atlantic County on November 27, 1939. The original will left the residuary estate, in which was lot number 19, to Rev. Augustine H. Rufe, and named him as sole executor. The codicil provided that in the event of the death of Mr. Rufe the executorship should go to Rev. Henry A. Evans and also that if Mr. Rufe should predecease the testatrix "the said residue and remainder of my estate I do hereby

give, devise and bequeath to Rev. Henry A. Evans to be disposed of in the manner and form which I have instructed Reverend Augustine H. Rufe". Augustine H. Rufe predeceased the testatrix. Harry A. Evans had long been in the occupancy of lot number 19 and upon Miss Dougherty's death took over as owner, resided there, paid off a $6,000.00 mortgage from his own funds, made personal expenditures for improvements and otherwise assumed the burdens and privileges of ownership.

On January 20, 1947, Rosenberg demolished the south wall of his garage, which paralleled the complainant's property side line at a distance of more than two feet, and commenced construction of a new wall three or four inches from the line and extending eighteen feet further towards the street. Complainant immediately gave notice to Rosenberg that the proposed building violated the restrictive deed covenants and that he would take the necessary legal steps toward enforcement. On March 1, 1947, he filed the bill herein. The work was temporarily discontinued, but on May 19, 1947, was resumed and carried to completion. The court found that the facts, including the restrictive covenants, established a neighborhood scheme which the reconstruction violated, and thereupon granted the relief noted above.

The bill alleged ownership in fee in the complainant, grounding title in the Dougherty will. Rosenberg answered admitting ownership as claimed, but at the beginning of the trial his counsel asked and was granted leave to amend the answer by denying ownership so that a construction of the will on the subject of title might be had. At the close of the trial defendants' counsel, consistently with the amendment to Rosenberg's answer and the course of the trial, contended that "If the instructions referred to in the will (of Blanche K. Dougherty) are valid, Rev. Evans holds the estate in trust; if they are invalid, or if the trust fails for any reason, he holds the estate in trust for the heirs-at-law of the deceased testatrix" and argued thereon that complainant had no right of action. The Vice Chancellor, in coming to his decision, considered that this argument presented three possibilities as to the status of

the title with consequent results as follows: first, as alleged in the bill, the complainant is the owner in fee; or, second, the will of Blanche K. Dougherty created a valid trust of which complainant is the trustee, and in this status the complainant is vested with the legal title; or, third, the will of Blanche K. Dougherty attempted to create a trust which failed in whole or in part, and if this be so the devise created a resulting trust of which complainant is the trustee and therefore vested with legal title. Then, expressing the opinion that the allegations of the bill were sufficient without change, but nevertheless to the end that the pleading should precisely allege title in the alternative as thus fully tried, argued and considered, the court directed that the bill be amended accordingly; and the amendment was made simultaneously with the entry of the decree. Defendants now assert that they were injured in that, as they say, they had no opportunity to answer or to be heard on the amended bill. Technically, they say they were not afforded procedural due process. The contention lacks reality. The controversy was on whether or not the will put complainant in sufficient authority to maintain the suit. What the court did at the end was to amend the bill to conform nicely to the matters which were tried, argued and decided as a result of the belated amendment to the answer. The practice of permitting amendments to make the pleadings conform to the issues as tried is of long standing. *Cf. Van Riper v. Claxton,* 9 *N. J. Eq.* 302, 306 *(Ch.* 1853*); Hampton v. Nicholson,* 23 *N. J. Eq.* 423, 428 *(Ch.* 1873*). Van Houten v. Van Houten,* 89 *N. J. L.* 301 *(E. & A.* 1916*),* is an instance of such an amendment on the law side even on appeal in the Court of Errors and Appeals. That practice is gathered up and restated in present rule 3:15–2, but we do not lean thereon in making our decision. Moreover, we consider that the assertion of ownership as contained in the bill before amendment was, as the Vice Chancellor suggested, sufficiently broad to encompass the question as finally determined. Defendants had appropriate notice of the judicial action, adequate opportunity to be heard and actually were fully heard on the issues of which the decree was a determination. They

had a trial according to our settled course of proceedings in equity for the protection of private rights; and thus they had due process, procedurally and otherwise. *Hyman v. Muller,* 1 *N. J.* 124. Finally as to this point, the only manner in which appellants allege they were harmed by the procedure is that there was a fourth possibility as to the status of Evans' title which was not embraced within the court's classification, and which defendants might have urged, namely, that Evans had no title whatever. That possibility has been urged before us and is included in our disposition of the following point.

██ It is contended that the court below wrongly decided the issue as to title and that plaintiff had no status to bring suit. It is truly said that there is no proof as to what instructions, if any, were given to Mr. Rufe, and from that it is argued that there is no valid trust for the reason that the trustee is given no duty to perform, indeed that there is no trust, either valid or invalid; and, again, that the trust, if any, is a passive trust wherefore the title did not vest in the complainant as trustee or otherwise but under our statute of uses, *R. S.* 46:3–9, vested immediately upon the death of Miss Dougherty in her heirs and next of kin. We are referred to the opinion of the Supreme Judicial Court of Massachusetts in *Olliffe v. Wells,* 130 *Mass.* 221 (1881), a decision which has been mentioned with approval by our own courts, *Smith v. Smith,* 54 *N. J. Eq.* 1 *(Ch.* 1895*),* affirmed 55 *N. J. Eq.* 821 *(E. & A.* 1896*), Condit v. Reynolds,* 66 *N. J. L.* 242 *(E. & A.* 1901*).* But the cited cases were all at the suit of the heirs and next of kin or those who were entitled to take under, or on the failure of, the trust, and the holdings were on issues framed between contesting claimants to the title for the purpose of determining where, as between them, the title lay. Strangers offending against restrictions running for the benefit of a property may not find protection under cover of equitable principles evolved for determining title as between contesting claimants. We do not know whether or not there are heirs or next of kin. If there are such, and they have an interest in lot number 19, this proceeding is to their advantage. Evans is in possession under color of title

and, in addition, may have certain equitable liens which come from his payment of encumbrances, taxes and the costs of improvements and repairs. He has, as we consider, sufficient authority to maintain, on behalf of the true owner or owners of the land, whoever he or they may be, an action in equity to protect the property against violations of the neighborhood scheme. Even if it be that the entire trust fails, the legal title is still in the trustee, who holds for the heirs-at-law. *Cf. The Pennsylvania Co., &c. v. Robb,* 118 *N. J. Eq.* 529, 532, *(Ch.* 1935*).* In *Smith v. Smith, supra,* on a bill the object of which was to question the validity of a testamentary trust, it was held that the court could not ascertain the purpose of the trust and therefore could not execute the trust. Nevertheless it was held, not that the title to the property, which we must assume was both real and personal, automatically and forthwith passed to the persons entitled, but that the legal title was in the trustees for the benefit of the heirs-at-law and next of kin of the testator.

The contention that our statute of uses, *R. S.* 46:3–9, automatically and initially executed the trust in favor of the heirs-at-law and next of kin fails for the reasons, if for no other, that we are unable, on the showing, to declare that the trust is dry or passive, and that the instrument names no one to a use or trust. That question involves parties not before us and is not ripe for decision.

We concur in the finding that the covenants contained in the John Eyre Shaw conveyances set up a neighborhood scheme for the benefit of all the lands covered thereby, of which scheme Rosenberg had notice and by which he was, in general, bound. *La Fetra v. Beveridge,* 124 *N. J. Eq.* 24 *(E. & A.* 1938*),* and cases there cited. Appellants do not deny the existence of the neighborhood plan, but they assert, first, that the covenants contain no restrictions upon the location of detached garages and, second, that if there was such a restriction it has been abandoned. A garage is a building, and if, as in the instant case, it is separate from the residence, a mere reading of the covenant is convincing that there was a restric-

tion against it. There were instances in the plots within the plan where, as here, that restriction was violated and, to the extent of violation, the restrictions in such instances may be said to have been abandoned. But there was a uniformity in the violative instances to which defendants' earlier garage conformed and to which their present garage does not. The neighborhood lots in this immediate vicinity are numbered 17, 18, 19, 20, 21, 22 and 23; of which the defendants' lot, as already noted, is number 20. On lots 21, 22 and 23 the garages are a part of the residence structure and are 44½ feet from the front property line. On lots 17, 18, 19 and 20 the garages are detached. On the first three lots they are, respectively, 58 feet, 59 feet and 56 feet from the front property line. On defendants' lot 20 the old garage was a little more than fifty one feet from the front line whereas the new garage is brought forward 18 feet and comes to a point 33.12 feet from the front property line, or 22.68 feet nearer to that line than any other detached garage. The new distance from the side line is about three inches as against the former distance of more than two feet and the covenant restriction of three feet. The fact that the extension shuts off light and air from complainant's house is not of itself a ground for injunctive relief, because in this state that exclusion is not *per se* unlawful, but it is an aggravating incident to an otherwise unlawful act. Defendant's effort to make substantial enlargement of his offending structure and to build still further forward and to the side partakes of the nature of an extension of a nonconforming use under zoning restrictions. The restrictions stand as an effective barrier against such an enlargement. By tacit agreement in thought and action in response to the need for automobile housing under advancing social conditions the neighborhood acquiesced in the exception of a separate garage, so designed and placed as to preserve ample setback from the street and adequate detachment from the side lines. The modification has not been of such a nature as to destroy the entire scheme. The defendants have shared in the benefits and should remain subject to the accompanying burden. *Cf. Sanford v. Keer,* 80 *N. J. Eq.* 240 *(E. & A.* 1912*);*

*Morrow v. Hasselman,* 69 *N. J. Eq.* 612 *(Ch.* 1905*); Wickwire v. Church,* 142 *N. J. Eq.* 174 *(Ch.* 1948), affirmed 1 *N. J.* 384 *(1949).*

Finally, it is urged that the decree should be reversed as to Anna Rosenberg. Mrs. Rosenberg, as the wife of Isadore, has an inchoate right of dower. She was brought in as a defendant. She made answer, including a denial that the litigated violations cause substantial damage to the complainant. She also set up that she was not one of the owners and had nothing to do with the reconstruction or widening of the garage. However, the record does not disclose that her interest was urged separately from that of her husband or that a dismissal of the bill as to her was sought. Legal representation of both has been identical throughout, and the case went in on behalf of both. If a separate disposition was desired as to her, the trial court should have been so apprised and not have been left to ascertain that purpose by minute perusal of the pleadings. Neither the court's opinion nor the decree touch upon the distinction. We think that under the circumstances she may be considered a proper party and that the decree should not be disturbed. Counsel fee and costs, however, are not allowed either against her or for her.

The decree under review will be affirmed, except for the elimination of counsel fee and costs against Anna Rosenberg.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal:* None.