255 N.J. Super. 65 (1992)
604 A.2d 635
GEORGE F. MURPHY AND ELINOR S. MURPHY, HIS WIFE, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
FRANK TRAPANI AND OLYMPIA TRAPANI, HIS WIFE, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
MANTOLOKING SHORES PROPERTY OWNERS ASSOCIATION, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
FRANK TRAPANI AND OLYMPIA TRAPANI, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1992.
Decided March 24, 1992.
*68 Before Judges MICHELS, HAVEY and CONLEY.
Greenbaum, Rowe, Smith, Ravin & Davis, attorneys for appellants/cross-respondents (Marianne McKenzie, of counsel and on the brief with Scott R. Miller).
Dasti, Murphy & Wellerson, attorneys for respondents/cross-appellants (Craig L. Wellerson on the brief).
Respondent Mantoloking Shores Property Owners Association, Inc. filed a letter of nonparticipation.[1]
The opinion of the court was delivered by HAVEY, J.A.D.
Defendants appeal from a judgment entered in the Chancery Division ordering them to remove a portion of a cantilevered deck extending over a lagoon adjacent to their home. Plaintiffs cross-appeal, contending that the trial court erred in not ordering defendants to remove the entire portion of the deck built extending over the lagoon. We conclude that the deck was an "obstruction" which was in clear violation of a neighborhood scheme and pertinent restrictions designed to prohibit navigational hazards in and over the lagoon. We therefore affirm on defendants' appeal and reverse and remand on plaintiffs' cross-appeal for the entry of an order requiring the removal of that portion of the deck extending over the lagoon.
The parties are homeowners in Section II of Mantoloking Shores, a Brick Township development situate on the Barnegat *69 Bay. Adjacent to the properties is a 90-foot wide lagoon which leads to the bay. Plaintiffs own lots 19 and 20 on the Brick Township tax map. The lots form a 90-degree angle where the lagoon makes an easterly turn. Defendants own lot 21, which is south of plaintiffs' property, and closer to the mouth of the lagoon which allows access into the bay. Defendants' lot has 70-feet frontage on the lagoon and is 90 feet deep from the street to rear property line.
The properties, being part of Section II of Mantoloking Shores, are subject to restrictions which in part regulate the use of the lagoons and structures in and on the lagoons. Pertinent to this appeal, is paragraph 6 of the restrictions, which provides in part:
Boats moored in lagoons must be moored only parallel and adjacent to the side lines of the lagoons. No piling or stakes or stays or mooring or other obstructions are permitted in the lagoons. However, bulkheads or docks of a design approved by the developers may be erected 85 feet toward the water from the street line of the lot. (Emphasis added).
The former president of the Mantoloking Shores Property Owners Association, John J. Flood, testified that the purpose of these restrictions concerning pilings, docks and "other obstructions," was to prevent the appearance of adverse "Coney Island" type structures along the waterfront, as well as to prevent navigational hazards in the lagoons.
Notwithstanding the 85-foot setback restriction, it is undisputed that the property owners in the development were allowed to construct a bulkhead or dock from 3.5 feet to 5 feet beyond the setback limitation. Thirteen of the 70 lots in Section II had bulkheads or docks which were built in violation of paragraph 6. For example, when defendants purchased their property in 1970, the builder had already constructed a common bulkhead along the waterfront property line which extended 5 feet beyond the rear of defendants' property.
In 1984, defendants constructed a permanent dock supported by pilings, 5 feet wide and 5 feet below the bulkhead. No objection was raised to the construction of this dock by plaintiffs, *70 the Association or any other property owner in Mantoloking Shores. In May 1986, defendants began the construction of a deck extending from the rear of their summer home, over the bulkhead and cantilevering over the lagoon for a distance of approximately 5 feet. As constructed, the deck is at least 5 feet above the water line, and approximately 1 foot from the common property line between defendants' and plaintiffs' properties. Essentially, the deck covers nearly all of the length of defendants' rear property line. Although many other homeowners had constructed decks over the top of their bulkheads, none of the decks extended out over the water. Defendants' cantilevered deck is the only one of its kind in the development.
Upon defendants' construction of the deck, plaintiffs immediately objected to defendants and contacted the Brick Township building inspector's office. Plaintiffs also contacted the Department of Environmental Protection (DEP) and the Army Corps of Engineers. After a stop-work order issued by Brick Township had been lifted, and defendants had satisfied the requirements of both the DEP and Army Corps of Engineers, the deck was completed.
Flood testified that when plaintiffs complained about the deck, he investigated the matter on behalf of the Association and, finding that the deck violated the restrictions, discussed the matter with defendants approximately one month after completion of the deck. While Flood acknowledged the violation, he explained that the Association did not have the resources to fight every infringement of the restrictions.
Two years after completion of the deck, plaintiffs filed the present action. Plaintiff George F. Murphy testified that he did so because the deck extended over the water and caused a navigational hazard. Specifically, he explained that his ability to maneuver and dock his boat was effectively diminished by 10 feet because defendants' deck extended over the lagoon and was constructed so close to the shared property line. Murphy stated that the cantilevered deck was "pretty damn dangerous" *71 because "if you get a high wind or something coming from the east, you're liable to go right under that damn thing with the boat." Jay Pierson, plaintiffs' expert, a licensed planner and land surveyor, also testified that the deck was the only deck in the development which extended over the lagoon, and because it was so far above the water a small boat could easily slide under it. He therefore concluded that the deck caused a navigational hazard to persons piloting a small boat in the lagoon.
Defendant Olympia Trapani denied that the deck caused a navigational hazard, explaining that boaters who were docking the boat could simply push off it with their hands. She noted also that there had been no accidents since the deck was constructed. Mrs. Trapani explained that she extended the deck 5 feet over the water because she would eventually lose space in her back yard due to construction of a proposed swimming pool. She also acknowledged that the deck was not used for boating purposes.
The trial court found that paragraph 6 of the restrictions prohibited structures in or on the water, but not "over the water." It observed that "it's interesting, too, that this deck does not extend out further than the dock which they've put up without objection like hundreds of other people in their development." While finding a "neighborhood scheme" regarding setbacks and other bulk and use requirements relating to the development, the court found that there was "[n]o prohibition per se" against a "deck as a deck," and thus concluded that defendants' deck did not violate the deed restriction. However, because the deck was constructed so close to the property line shared by the parties, the trial court determined that it adversely affected plaintiffs by creating a navigational hazard. The court therefore concluded that defendants' deck should be set back as far from the shared property line as was defendants' house, approximately 7 feet. Thus, it ordered that the deck be cut back 7 feet from the shared property line. The court also noted that this 7-foot setback was consistent with the setback *72 between the deck and the adjoining neighbor's property on the other side of defendants' lot.
We disagree with the trial court's conclusion that defendants' deck did not violate the restriction under paragraph 6. While it is true that the restriction does not prohibit "decks" per se, we must examine not only the language of the restriction, but the circumstances surrounding its creation. See Shadow Lake Village Condo. Ass'n Inc. v. Zampella, 238 N.J. Super. 132, 139, 569 A.2d 288 (App.Div. 1990). Also, while generally we apply the rule of strict construction when dealing with a covenant, this rule should not be used to defeat the obvious purpose of the restriction. Bruno v. Hanna, 63 N.J. Super. 282, 287, 164 A.2d 647 (App.Div. 1960). The precise form of a covenant is of little consequence if the intent is reasonably clear, and its apparent purpose should not be defeated by a technical construction of the language used. Broad & Branford Place Corp. v. J.J. Hockenjos Co., 132 N.J.L. 229, 236, 39 A.2d 80 (Sup.Ct. 1944). Further, equity should not interpret a covenant contrary to its underlying purpose and legal effect simply because the interpretation will diminish litigation or give better protection to a party. Coursen v. Canfield, 21 N.J. Eq. 92, 100 (Ch. 1870).
Although paragraph 6 does not refer to "decks," there can be no question that a deck is an "obstruction," and thus prohibited by the restriction. "Obstruction" is defined as a "hindrance, obstacle or barrier," and an "obstruction to navigation" is defined as "[a]ny unnecessary interference with the free movements of vessels." Black's Law Dictionary 972 (5th ed. 1979). The evidence established that the cantilevered deck, extending over the water 5 feet, is a hindrance or obstacle to the passage of boats in the lagoon, and also poses a safety hazard for small vessels. Further, although the restriction only prohibits structures "in" the lagoon, the distinction between "in" and "over" is of no consequence. The plain purpose of the *73 restriction is to prohibit any obstruction, whether it be in or over the lagoon.
Moreover, it is apparent that the restriction pertaining to "obstructions" affecting the lagoons was an integral part of a "neighborhood scheme." Neighborhood schemes are the product of restrictive covenants, and to be effective and enforceable must be universal, reciprocal and reasonably uniform. Blaine v. Ritger, 211 N.J. Super. 644, 654, 512 A.2d 553 (App.Div.), certif. denied, 105 N.J. 546, 523 A.2d 183 (1986); Olson v. Jantausch, 44 N.J. Super. 380, 386, 130 A.2d 650 (App.Div. 1957). The law is settled that:
where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof; and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase. [De Gray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329, 340, 24 A. 388 (Ch. 1892), aff'd, 67 N.J. Eq. 731, 63 A. 1118 (E & A 1904).]
Here, when the property owners in Section II purchased their properties, they took their lots subject to a reasonably uniform set of restrictions, easements and reservations. The evidence established that the developer intended to create an integrally related lagoon community, with appropriate restrictions against obstructions in or over the lagoons, both to preserve the aesthetics of the waterfront neighborhood and to prevent navigational hazards in the waterways. Plaintiffs, as property owners, were entitled to enforce the restriction to maintain the integrity of the developers's general scheme.
Of course, violations of restrictive covenants can constitute an abandonment of a neighborhood scheme, in whole or in part. See City of Paterson v. Schneider, 31 N.J. Super. 598, *74 604, 107 A.2d 553 (App.Div. 1954). The question, resolved by examination of the circumstances of each case, is whether the violations are such as to indicate an abandonment or modification of the original general plan which makes enforcement of the plan inequitable because of changed conditions. Blaine, 211 N.J. Super. at 654, 512 A.2d 553. The violations must be so pervasive as to indicate either a change in the neighborhood or a clear intent on the part of the property owners generally to abandon or modify the original plan. La Fetra v. Beveridge, 124 N.J. Eq. 24, 31-32, 199 A. 70 (E & A 1938).
It is undisputed that 13 of the 70 lot owners in Section II had docks or bulkheads extended into the lagoon in violation of paragraph 6 of the restrictions. Thus, to the extent that the docks and bulkheads violated the restrictions, there may well have been an abandonment of the neighborhood scheme. However, with the exception of defendants, no other property owner had constructed a deck over the lagoon. This single violation of the restriction can hardly be deemed an abandonment of the intent of the restriction to prohibit "obstructions" which may cause a navigational hazard. We therefore conclude that construction of the cantilevered deck violated the neighborhood scheme and paragraph 6 of the restrictions.
We reject defendants' argument that the trial court erred in concluding that the deck constituted a navigational hazard. We do not agree with defendants that plaintiffs were required to produce an expert on navigational matters to establish such a hazard. As the trial court observed, it is common knowledge "that boats are not cars and you cannot stop them with brakes...." A nonexpert may give his opinion on matters of common knowledge and observation. See State v. Johnson, 120 N.J. 263, 294, 576 A.2d 834 (1990). Both Murphy and Pierson testified that defendants' deck constituted a navigational hazard to boats docking at plaintiffs' property because the deck was constructed over the water and very close to the shared property line. The trial court's finding as to the navigational *75 hazard is supported by substantial credible evidence on the record as a whole. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
Finally, we reject defendants' claim that plaintiffs' cause of action should be barred by the doctrines of equitable estoppel, laches, waiver and relative hardship. See Lavin v. Board of Ed. of City of Hackensack, 90 N.J. 145, 151-52, 447 A.2d 516 (1982); Carlsen v. Masters, Mates & Pilots Pension Trust, 80 N.J. 334, 339-341, 403 A.2d 880 (1979); West Jersey Title & Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 152-153, 141 A.2d 782 (1958); Gilpin v. Jacob Ellis Realties, Inc., 47 N.J. Super. 26, 31, 135 A.2d 204 (App.Div. 1957). Plaintiffs objected to the deck the moment they observed the cantilevered supports being constructed. They also immediately contacted various local, state and federal governmental agencies about the deck which ultimately resulted in the necessity of defendants obtaining permits after construction was completed. Thus, defendants were placed on notice immediately of plaintiffs' objection during the construction phase. Stated differently, plaintiffs did not lull defendants into a false sense of security or belief that they acquiesced in what defendants were doing. See Blaine, 211 N.J. Super. at 656, 512 A.2d 553. Thus, defendants cannot complain that they were prejudiced in any way by the course of action followed by plaintiffs.
We also conclude that the trial court erred in requiring the removal of only 7 feet of defendants' deck. This remedy ignores the fact that the entire deck, to the extent that it cantilevers over the lagoon, is in violation of paragraph 6 of the restrictions. The limited remedy also does not take into consideration the fact that the navigational hazard, found to exist by the court, extends the entire length of the deck, since, as established by the proofs, small vessels attempting to stop may float under the deck. Thus, the remedy afforded must benefit all property owners in the development, not simply the plaintiffs.
*76 We reverse and remand for the entry of an order requiring defendants to remove that portion of the deck constructed over the lagoon.
NOTES
[1] Plaintiff Mantoloking Shores Property Owners Association filed a separate complaint against defendants setting forth the same allegations and requesting the same relief as the Murphys. The judgment entered was in favor of the Association as well as the Murphys.