733 A.2d 1192 (1999)
323 N.J. Super. 529
Joel J. STEIGER, Carole Ann Steiger, and William Sneirson, Plaintiffs-Appellants,
v.
Vito LENOCI and Isabel Lenoci, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 24, 1999.
Decided July 12, 1999.
*1193 Jeffer, Hopkinson & Vogel, Hawthorne, for plaintiffs-appellants (Melinda B. Maidens, on the brief).
Honig & Honig, Waldwick, for defendants-respondents (Steven M. Honig, on the brief).
*1194 Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiffs appeal from the dismissal, after a bench trial, of their complaint seeking enforcement against defendants of a reciprocal restrictive deed covenant which provides in pertinent part that "no outbuildings of any kind or character ... shall be erected upon any lot," based on the trial court's finding that this restriction had been abandoned or modified in the immediate vicinity of defendants' home. The court's decision rests on two basic premises: first, that there can be an abandonment or modification of a uniform neighborhood scheme in a small section of a development which is subject to reciprocal restrictive deed covenants, and second, that small storage sheds located on eight other properties on defendants' block violate the deed restriction against "outbuildings" in substantially the same manner and degree as defendants' large pool cabana. These premises are both inconsistent with the fundamental principles which govern the validity and enforcement of reciprocal restrictive deed covenants designed to maintain a uniform neighborhood scheme. Therefore, we reverse.
The area subject to the restrictive covenant consists of 118 one-family residential lots on a 50-acre tract in Ridgewood, sometimes referred to as Manor Ridge. When the tract was developed in the late 1920s, the developer established various deed restrictions "to run with the land." In addition to the covenant prohibiting "outbuildings," the Manor Ridge deeds provide that (1) "no more than one house intended for not more than one family shall be built on any plot," and (2) "no house shall be erected on any ... property... costing less than Fourteen thousand ($14,000) dollars based on the cost of construction of January 1st 1926." The deeds also require any residence to be set-back forty feet from the street and any detached garage to be set back seventy-five feet. The evident objective of this set of deed restrictions was to establish an exclusive residential community.
Defendants bought their home in the summer of 1994. Shortly thereafter, they contracted to do extensive renovations to the home and to construct a "pool cabana" next to an existing in-ground swimming pool. Defendants began construction of the cabana in late March of 1995.
Plaintiff William Sneirson, who lives two houses away, observed the construction and promptly notified the municipal building department that the structure violated the restrictive covenant prohibiting "outbuildings." The building department issued a stop work order, but after the municipal attorney advised the department that it did not have the responsibility to enforce a restrictive covenant, it rescinded the order.
Plaintiff Joel Steiger returned from vacation around the middle of April and also noticed the partially constructed cabana. On April 21, 1995, his attorney sent a letter to defendants which stated that the cabana violated the deed restriction and demanded that defendants stop construction and remove the partially completed structure. The letter also indicated that if defendants failed to comply with this demand, the Steigers would file suit for injunctive relief. Despite receipt of this letter, defendants continued construction.
On May 3, 1995, plaintiffs filed this action seeking to restrain completion of the cabana and to compel removal of the partially completed structure. The trial court entered an order to show cause but denied plaintiffs' application for temporary restraints. On the return date, the court denied plaintiffs' application for a preliminary injunction, but entered an order which specifically stated that if defendants continued with construction, they "shall do so at their own risk." Defendants completed construction of the cabana shortly thereafter.
*1195 The cabana is a substantial structure. It covers more than 600 square feet, and has a cathedral ceiling, bathroom, refrigerator, dryer, wet bar and heating system. It is located only five feet from the rear boundary line between defendants' property and the property of plaintiffs Joel and Carole Steiger, close to the Steigers' swimming pool.
At trial plaintiffs presented evidence that 15 of the 118 properties located in Manor Ridge are occupied by ancillary structures. Ten of those structures are small sheds for the storage of pool or lawn mowing equipment, one is a dollhouse and the other four are pool cabanas. Defendants' cabana is the largest in Manor Ridge; the only other one nearly as large is located on a two and a half acre lot, which is five times larger than defendants' half acre lot.
The trial court concluded in a letter opinion that because nine of the nineteen properties located on defendants' block are occupied by ancillary structures (including defendants' cabana), the restrictive covenant prohibiting "outbuildings" has been modified "at least in the immediate area of defendants' property." The court also concluded that defendants' pool cabana did not constitute a "more intense violation than the storage sheds" located on eight other properties on the block. In addition, the court stated that the record did not support a finding that "defendants' pool cabana is a detriment to plaintiffs or to the neighborhood scheme."
Our law imposes a heavy burden upon a party who seeks to establish an abandonment or modification of a reciprocal restrictive deed covenant based on past violations. "The violations must be so pervasive as to indicate either a change in the neighborhood or a clear intent on the part of the property owners generally to abandon or modify the original plan." Murphy v. Trapani, 255 N.J.Super. 65, 74, 604 A.2d 635 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). Therefore, evidence of isolated or minor violations is insufficient to establish an abandonment or modification of a restrictive covenant. La Fetra v. Beveridge, 124 N.J. Eq. 24, 31-32, 199 A. 70 (E. & A.1938); Homann v. Torchinsky, 296 N.J.Super. 326, 338, 686 A.2d 1226 (App.Div.), certif. denied, 149 N.J. 141, 693 A.2d 110 (1997); Blaine v. Ritger, 211 N.J.Super. 644, 654-55, 512 A.2d 553 (App.Div.), certif. denied, 105 N.J. 546, 523 A.2d 183 (1986).
The record does not show the kind of pervasive violations of the prohibition against "outbuildings" required to establish an abandonment or modification. Prior to the construction of defendants' pool cabana, only 15 of the 118 properties in Manor Ridge were occupied by "outbuildings," and 10 of those structures were small storage sheds and another a dollhouse. Thus, only thirteen percent of the properties in Manor Ridge violated the restrictive covenant and, except for the four properties with pool cabanas, most of the violations were minor.
The trial court implicitly acknowledged that the record would not support a finding of abandonment or modification of the covenant against "outbuildings" in all of Manor Ridge, by limiting its finding to "the immediate vicinity of defendants' property." However, this focus upon one small section of Manor Ridge is inconsistent with the essential objective of reciprocal restrictive deed covenants, which is to maintain a uniform development scheme on all properties subject to the covenants. Two essential features of such covenants are that the restrictions must be "universal""applying to all lots of like character brought within the scheme"and "reciprocal""constituting a benefit to all lots ... subject to the burden imposed." Homann v. Torchinsky, supra, 296 N.J.Super. at 334, 686 A.2d 1226 (quoting Olson v. Jantausch, 44 N.J.Super. 380, 386, 130 A.2d 650 (App. Div.1957)). The universality of restrictive covenants, and the right of all covered property owners to enjoy their benefits, would be seriously undermined if violations within a small section of the overall development *1196 were found to constitute an abandonment or modification in that limited area. Moreover, the recognition of an abandonment or modification of a restrictive covenant in one area of a development would be likely to result in an erosion of its effectiveness in immediately adjoining areas. Therefore, in the absence of evidence that one area of a development subject to a restrictive deed covenant has some significant feature, such as physical separation by a waterway or location on a major thoroughfare, see Weinstein v. Swartz, 3 N.J. 80, 89-90, 68 A.2d 865 (1949), which distinguishes it from the rest of the development, the question whether a covenant has been abandoned or modified should be determined on the basis of development patterns in the entire neighborhood subject to the restriction. See La Fetra v. Beveridge, supra, 124 N.J. Eq. at 31-32, 199 A. 70 ("Before violations can constitute an abandonment they must be so general as to indicate either a change in the neighborhood or a clear intent on the part of the property owners generally to abandon the original plan."); see also Murphy v. Trapani, supra, 255 N.J.Super. at 73-75, 604 A.2d 635; Blaine v. Ritger, supra, 211 N.J.Super. at 654-55, 512 A.2d 553.
The trial court failed to identify any justifiable basis for concluding that the prohibition against construction of "outbuildings" had been abandoned or modified in the immediate vicinity of defendants' property while remaining in effect in the rest of Manor Ridge. The properties in the area of defendants' home are not physically separated from or larger than other properties in Manor Ridge. In fact, the only difference the trial court identified between this area and the rest of Manor Ridge is that it contains a greater percentage of properties occupied by ancillary structures (i.e., eight of nineteen, or forty-two percent, compared with thirteen percent in the development as a whole). Therefore, the principles of universality and reciprocityunder which all property owners in a neighborhood subject to a restrictive covenant enjoy its benefits dictate that the court should have decided the issue of abandonment or modification on the basis of the entire Manor Ridge development.
Moreover, even if it were appropriate to determine whether there had been an abandonment or modification of the covenant prohibiting outbuildings based on violations in the immediate vicinity of defendants' property, there still would not be a sufficient evidential foundation for a finding of an abandonment or modification which would allow the construction of a large pool cabana. There is only one other pool cabana in the general vicinity of defendants' property; the other eight ancillary structures on the block are small storage sheds, which are less than one-fifth the size of defendants' cabana. Thus, even if those violations were sufficient to establish a modification of the covenant, the modification would only permit the erection of other small structures of a similar nature. It would not permit construction of a much larger and more intrusive structure, such as a pool cabana. See La Fetra v. Beveridge, supra, 124 N.J. Eq. at 31-32, 199 A. 70; Evans v. Rosenberg, 1 N.J. 590, 599, 65 A.2d 55 (1949); Murphy v. Trapani, supra, 255 N.J.Super. at 74, 604 A.2d 635; Blaine v. Ritger, supra, 211 N.J.Super. at 654-55, 512 A.2d 553.
Finally, we perceive no basis for withholding a mandatory injunction requiring defendants to remove the cabana. Because this case involves a deed restriction, defendants had at least constructive notice of the prohibition against "outbuildings" before they began construction. See Margate Park Protective Ass'n v. Abate, 22 N.J.Super. 550, 562, 92 A.2d 110 (Ch.Div. 1952). Moreover, within weeks after construction began, plaintiffs notified defendants of the restrictive covenant and their intention to compel compliance. Thus, even though defendants expended a substantial *1197 amount of money to construct the cabana, a significant portion of those expenditures were incurred after defendants received actual notice that the structure was prohibited. In addition, plaintiffs established that the cabana substantially interferes with the enjoyment of their properties. Plaintiff Joel Steiger testified that the cabana is so close to his swimming pool that it blocks breezes from that direction. The cabana also has a picture window which directly faces his pool. Therefore, we are unable to conclude that the cost of removal of the cabana is so disproportionate to plaintiffs' loss of the full enjoyment of their properties that a court should decline to grant plaintiffs this relief. See Gilpin v. Jacob Ellis Realties, Inc., 47 N.J.Super. 26, 34, 135 A.2d 204 (App.Div. 1957) ("[A] mere disproportion between the harm to the defendant and the benefit to the plaintiff [in granting a mandatory injunction to enforce a restrictive covenant] will not warrant a refusal of such relief, where it is the sole reason offered by the defendant for the refusal, unless the disproportion is gross or of considerable magnitude."); see also Lizak v. Faria, 96 N.J. 482, 499-500, 476 A.2d 1189 (1984); Blaine v. Ritger, supra, 211 N.J.Super. at 655-56, 512 A.2d 553.
Accordingly, the judgment dismissing plaintiffs' complaint is reversed and the case is remanded to the trial court for entry of a judgment requiring defendants to remove the cabana.