799 A.2d 656

JOEL J. STEIGER AND CAROLE ANN STEIGER, HUSBAND AND WIFE, PLAINTIFFS–APPELLANTS, v. VITO LENOCI AND ISA-BEL LENOCI, HUSBAND AND WIFE, DEFENDANTS–RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 23, 2002—Decided June 14, 2002.

Carchman, J.A.D., filed a concurring opinion.

See also, 323 N.J.Super. 529, 733 A.2d 1192.

Before Judges SKILLMAN, CARCHMAN and WELLS.

*Jerome A. Vogel* argued the cause for appellants (*Jeffer, Hopkinson & Vogel,* attorneys; *Melinda B. Maidens,* on the brief).

*David M. Meisels* argued the cause for respondents (*Herrick, Feinstein,* attorneys; *Mr. Meisels,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal is a sequel to *Steiger v. Lenoci,* 323 *N.J.Super.* 529, 733 *A.*2d 1192 (App.Div.1999), in which we held that a pool cabana constructed by defendants violated a reciprocal restrictive deed covenant which prohibits the construction of "outbuildings" other than "garages" in an area of Ridgewood called Manor Ridge and remanded for entry of a judgment requiring defendants to remove the cabana. After defendants demolished the cabana, they immediately contracted with an architect to design a new structure on the same foundation as the cabana, which defendants described as a "garage." The plans for this structure included not only an area for the storage of cars but also a large adjoining area for the storage of other personal items and a "powder room" with a toilet, sink and vanity. In addition, the plans provided for the installation of sliding glass doors along the side of the structure, which lead to an outdoor patio adjoining defendants' swimming pool. The plans for the structure also included hot and cold running water, a sump pump and a heating system.

When one of the plaintiffs in the prior litigation observed the start of construction, he notified defendants that this structure, like the pool cabana, would violate the restrictive covenant prohibiting "outbuildings." However, defendants disregarded this warning and continued construction. Plaintiffs Joel and Carole Steiger, who were also plaintiffs in the prior litigation, then brought this action for enforcement of the restrictive covenant and applied for a preliminary injunction. The trial court denied this relief, but

noted in its order that if defendants proceeded with construction, they would "do so at their own risk."

Shortly after completing construction of the new structure, defendants filed a motion for summary judgment. The trial court visited the site in connection with the motion, took brief testimony from defendant Isabel Lenoci during the visit, and subsequently issued a brief letter opinion which concluded that defendants' new structure is a "garage" and therefore not prohibited by the restrictive covenant.

Plaintiffs appeal from the judgment dismissing their complaint. We reverse.

The restrictive covenant provides:

That no outbuilding of any kind or character, other than a garage for not more than three cars, shall be erected upon any lot or plot, which said garage shall be used only as a private garage incidental to the dwelling on the same plot, or may be connected with the dwelling and shall in any event be of a design in keeping with the design of the dwelling, and if built separate from the dwelling shall be located at least seventy-five feet from the street line.

It is evident from the language of this restrictive covenant that the "garage" exception to the general prohibition against the construction of "outbuildings" was intended to be limited. Although the deed establishing the restrictive covenant does not contain a definition of "garage," it states that any "garage shall be used only as a private garage incidental to the dwelling." Consequently, a structure which is used or is readily susceptible to being used for some purpose other than as a garage is prohibited.

It is clear from the building plans and photographs submitted to the trial court, the deposition testimony of defendants' architect, Scott Lurie, and defendant Vito Lenoci, and the trial judge's record of her observations when she visited defendants' property, that the structure defendants have constructed on the foundation of their former pool cabana is not simply a garage. The term "garage" is ordinarily understood to mean "a building or shed for the storage of a motor vehicle or vehicles." *The Oxford Encyclopedic English Dictionary* 579 (1991). Although the central section of defendants' structure can be used for the storage of

motor vehicles, the other sections are not required for this purpose and are readily susceptible to a variety of other uses. As previously noted, those other sections consist of a large storage room (sixteen feet by six feet) and a powder room with a toilet, sink and vanity. Thus, those sections of the structure are obviously designed for uses other than the storage of motor vehicles, such as the storage of other personal possessions or, as Mr. Lenoci testified, gardening activities. The restrictive covenant's prohibition against the construction of "outbuildings" except for "garages" would obviously preclude defendants from constructing a free-standing storage facility or bathroom in their backyard. *See Steiger, supra,* 323 *N.J.Super.* at 536, 733 *A.*2d 1192. Defendants cannot avoid this prohibition by simply incorporating a storage facility or bathroom in the same structure as a garage. Therefore, regardless of whether defendants actually intend to use this structure as a pool cabana, as plaintiffs contend, or for other activities such as gardening, as defendants contend, the structure itself is not solely a "garage," and thus is prohibited by the restrictive covenant.

Because this case must be remanded to the trial court for the formulation of a remedy, we must address plaintiffs' further argument that the restrictive covenant precludes defendants from constructing any detached garage because they already have a garage within their home. The restrictive covenant only applies to "outbuildings." This term is defined as "a small building appurtenant to a main building and generally separated from it." *Bruce v. McClees,* 110 *N.J. Eq.* 92, 93, 158 *A.* 849 (Ch.1932), *aff'd o.b.,* 112 *N.J. Eq.* 172, 164 *A.* 14 (E. & A.1933). Thus, a restrictive covenant prohibiting the construction of any "outbuilding" does not "prevent the construction and maintenance of the modern type of attached garage, if it is an integral part of the dwelling house and so constructed as not to give the effect of a separate building and so attached to the house as to present the appearance of and be, in fact, architecturally and otherwise, part of it." *Id.* at 95, 158 *A.* 849. It is clear from the photographs of

defendants' home that the original garage is an integral part of their first floor, with the same architectural design as the rest of the home and a bedroom or other living area on the second floor directly above. Therefore, this part of defendants' home is not an "outbuilding" and is not subject to the restrictive covenant.

Moreover, under the plain terms of the restrictive covenant, the inclusion of a garage within defendants' home does not affect defendants' right to construct a detached garage for not more than three cars. The Manor Ridge deeds contain no restriction upon the total garage space that may be constructed on a lot. The only applicable restriction is the prohibition against the construction of "outbuildings," which is subject to an exception for a garage accommodating not more than three cars. Thus, a homeowner could construct a home with an incorporated garage for four cars, without violating the restrictive covenant. Similarly, because incorporated garage space does not affect a homeowner's right to construct a detached garage, a home in Manor Ridge may include both incorporated space for two cars and a detached two-car garage.

The concurring opinion's conclusion that any garage space incorporated in the home must be deducted from the three-car limit the restrictive covenant imposes upon a detached garage is not supported by the language of the restrictive covenant. Restrictive covenants are strictly construed, and any ambiguities must be resolved in favor of the homeowners' unrestricted use of their property. *Homann v. Torchinsky,* 296 *N.J.Super.* 326, 335, 686 *A.*2d 1226 (App.Div.), *certif. denied,* 149 *N.J.* 141, 693 *A.*2d 110 (1997); *Bruno v. Hanna,* 63 *N.J.Super.* 282, 285–86, 164 *A.*2d 647 (App.Div.1960). The concurrence's expansive reading of the restrictive covenant cannot be reconciled with this rule of strict construction. It was well-recognized in the late 1920s, when the covenant was established, that there is significant difference between a garage which "is an integral part of the dwelling house itself" and a garage which is merely "connected with the dwelling house." *Bruce v. McClees, supra,* 110 *N.J. Eq.* at 95, 158 *A.* 849;

*see also Peirce v. Beyer,* 66 *Colo.* 554, 185 *P.* 348 (1919); *McGreggor v. Peabody,* 240 *Mich.* 425, 215 *N.W.* 241 (1927); *Rothholz v. Stern,* 97 *N.J. Eq.* 189, 127 *A.* 97 (Ch.1924). Thus, the garage exception to the restrictive covenant prohibiting "outbuildings" simply recognizes that a garage-outbuilding may be either "connected with" or "separated from" the dwelling. It has no applicability to garage space that is an integral part of the dwelling. *See Murtha v. McGarry,* 112 *N.J. Eq.* 454, 455–58, 164 *A.* 698 (Ch. 1933). Therefore, in the absence of an express indication in the restrictive covenant that the inclusion of garage space in a home limits a property owner's right to construct a detached garage, we decline to read such a restriction into defendants' deed.

Accordingly, we reverse the dismissal of plaintiffs' complaint and remand the case to the trial court for the formulation of a remedy that enforces the restrictive covenant in conformity with this opinion.

CARCHMAN, J.A.D. (concurring).

I concur with the majority opinion reversing the dismissal of plaintiffs' complaint. I also agree with the majority that defendants' transparent attempt to avoid compliance with our earlier determination was properly the subject of plaintiffs' complaint and must now be addressed by way of remedy by the trial judge. I further agree with the majority that the restriction does not preclude defendant from constructing an outbuilding to house a car and that such use should be restricted to that purpose and not the ancillary uses obviously incorporated in the "garage" constructed by defendants.

The trial judge's ruling was narrow. She incorrectly determined that the structure was a garage, a determination that has now been put to rest; however, she did not address the question of how many cars can be accommodated in the garage.

The majority, in dicta, has resolved that issue and suggested that defendants may now construct a garage to house three cars notwithstanding that the dwelling incorporates a two-car garage.

I suggest that the issue of quantum of car capacity should be first addressed by the trial judge as part of the remand to determine remedy, and our consideration of the issue is premature.

Since the majority addresses the issue, I offer a different view. I would read the restriction as limiting the total garage space on the premises to three cars. I reach this conclusion by considering the entire deed restriction which provides:

> That no outbuilding of any kind or character, other than a garage for not more than three cars, shall be erected upon any lot or plot, which said garage shall be used only as a private garage incidental to the dwelling on the same plot, or may be connected with the dwelling and shall in any event be of a design in keeping with the design of the dwelling, and if built separate from the dwelling shall be located at least seventy-five feet from the street line.

As I read the restriction, the grantor permitted a garage on the premises to house three cars. Two alternatives are available for construction of the garage, either as an outbuilding (the first disjunctive clause of the restriction) or a garage connected to the house (the second disjunctive clause). Defendants here constructed their house with a two-car garage "connected with the dwelling" and have erected an outbuilding which contains space for an additional two cars. The interpretation offered by the majority dicta suggests that the owner may now house three cars in the outbuilding thus permitting the housing of five cars on the premises.

I acknowledge that restrictive covenants must be strictly construed and ambiguities resolved in favor of the homeowner's use of the property, *ante* at 95, 799 at *A.*2d 658–59; however, restrictions must also be read so that the result reflects both the intent of the grantor and common sense reality. This restriction reflects an accommodation by the grantor to allow the owner to house cars either in a garage attached to the dwelling or an outbuilding. I fail to perceive that the language or a reasonable interpretation of the restriction would support the housing of five cars on the premises when the grantor specifically identified three. The critical concern of the grantor was whether the garage was attached to or separate from the dwelling and if separate, limiting

its size. Under the analysis offered by the majority, an owner could construct a three-car garage attached to the dwelling *and* then an outbuilding to house yet another three cars. The use of the disjunctive "or" in setting forth the alternative garage structures leads me to conclude that the operative number is three not three plus whatever is constructed as a connection to the dwelling.

I urge that this issue be first addressed by the trial judge as she determines an appropriate remedy to satisfy our determination that the present structure violates the restrictive covenant.