35 A.3d 1198

AMERICAN DREAM AT MARLBORO, L.L.C., PLAINTIFF–RESPONDENT, v. THE PLANNING BOARD OF THE TOWNSHIP OF MARLBORO; THE MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MARLBORO, DEFENDANTS, AND PATRICIA CLEARY, DEFENDANT/INTERVENOR–APPELLANT, AND ALBERT W. RUDEL; JOANNE LIU RUDEL; IMRICH VERDON; DANUTA VERDUN; VICTOR WAHBA; LAURA WAHBA; R. DURAIPANDIYAN; L. APPUKUTTAN; MORRIS KAPLAN; CLIFFORD SNEYERS; LESLIE SNEYERS; LILLY T. CHAO; MICHAEL G. MYERS; MICHELLE A. MYERS; ROBERT G. OBEROSLER; PATRICIA P. OBEROSLER; KWAKU BOAMAH; ESTHER BOAMAH; JOHN D. BERARDI; RONALD ROSSETTI; D. JORGENSEN; DENIS COLEMAN; MARGUERITE ROSS; JOSEPH STEFANO AND NICOLE STEFANO, DEFENDANTS.

Argued January 18, 2012—Decided February 16, 2012.

*Thomas J. Trautner, Jr.*, argued the cause for appellant (*Wolff & Samson*, attorneys; *Mr. Trautner* and *Arthur S. Goldstein*, on the brief).

*Ronald S. Blumstein* argued the cause for respondent (*Kaplan Companies*, attorneys).

PER CURIAM.

This matter arises in the context of a dispute about a deed restriction that a planning board imposed on a developer. Although the deed restriction was an express condition of the Planning Board's subdivision approval, the developer did not thereafter record it, but instead sought new approvals that would effectively eliminate it.

In the proceedings that followed, both the appropriate mechanism and the quantum of proofs needed for removal of a deed restriction were litigated. This appeal raises the dispute of the parties about those issues for our consideration.

I.

Plaintiff American Dream at Marlboro, L.L.C., is the successor in interest to Beacon Road Associates, L.L.C., an entity that served as the residential developer of a series of lots, some of which are at the center of the dispute before this Court. In 1994

and 1995, plaintiff's predecessor sought the approval of the Marlboro Township Planning Board for its proposed development, known as Beacon Woods I. The development required numerous variances, the specifics of which are not germane to this dispute.

The layout of the development essentially involved a series of building lots for homes on both sides of a roadway, to be named Haven Way, which ended in a cul de sac. As originally designed, there was a lot located near the end of Haven Way that had only fifty feet of frontage on the roadway and that was to be reached by a long driveway, a configuration referred to as a flag lot. Although the flag lot was of sufficient size to meet the bulk criteria, a variance was needed because of a municipal ordinance that generally limited subdivision of flag lots. As part of the approval process, plaintiff's predecessor agreed to a deed restriction whereby the flag lot would not be subdivided in the future. As a result, the Planning Board's June 7, 1995, resolution granting preliminary major subdivision approval was specifically conditioned on the inclusion of a restriction in the deed for the flag lot that would preclude its further subdivision. At the time, the Planning Board described that condition to be sound planning, but did not further explain its rationale.

In 1997, plaintiff's predecessor, having failed to file the deed restriction relating to the flag lot, returned to the Planning Board. As part of an application for final major subdivision approval, it sought to make a variety of changes so as to take advantage of the criteria applicable to a cluster development. During that approval process, plaintiff's predecessor continued to agree to be bound by the previously-imposed but unfiled deed restriction relating to the flag lot.

In June 1997, when the Planning Board granted final approval for the amended application, its resolution recited the purposes found in the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –163, that supported the Board's decision, *see N.J.S.A.* 40:55D–2a (encouraging municipal action to "promote the public health, safety, morals and general welfare"); *N.J.S.A.* 40:55D–2c (encouraging

development that will "provide adequate light, air and open space"); *N.J.S.A.* 40:55D–2e (encouraging development that will "promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment"); *N.J.S.A.* 40:55D–2i (encouraging development that will "promote a desirable visual environment through creative development techniques and good civic design and arrangement"). As part of its resolution, the Planning Board continued to include the requirement that the flag lot be subject to the deed restriction to prevent its further subdivision.

In September 1997, plaintiff, which was then the contract purchaser of the proposed development, entered into an agreement with the Township pursuant to which plaintiff would serve as the developer of the project. That agreement expressly included plaintiff's agreement to be bound by all of the terms and conditions expressed in the 1995 and 1997 Planning Board resolutions. In spite of that agreement, plaintiff never recorded the deed restriction relating to the flag lot.

Instead, in 1998 plaintiff entered into a contract to purchase a tract of land behind the flag lot, which it then sought to merge with the flag lot for the purpose of creating a new six-lot subdivision at the end of Haven Way, the previously-approved cul de sac, to be called Beacon Woods II. The tract that plaintiff planned to acquire included an easement that could be used to access the tract through a nearby major roadway, but as part of the Beacon Woods II plan, plaintiff intended to abandon that easement. In its place, plaintiff intended to transform the flag lot's driveway into a new road, to be called Sandra Court, that would lead from Haven Way to a second cul de sac development.

In order to effectuate that new plan, plaintiff sought concept plan approval. During that process, plaintiff did not reveal that the flag lot was required to be deed-restricted against further subdivision, but instead described its new plan as involving the "reconfiguration of one existing lot." Early in February 1999,

plaintiff submitted its application to the Planning Board seeking preliminary and final major subdivision approval for Beacon Woods II, the new aspect of its overall development plan.

In March 1999, defendant Patricia Cleary entered into a contract with plaintiff to purchase one of the properties in the originally-approved development. The lot she chose, designated as lot 20.09, was near the end of Haven Way. According to the original proposal for the development, her lot backed onto the existing flag lot and was next to the driveway that was proposed to serve the flag lot. She contends that plaintiff did not reveal to her that the flag lot was subject to the deed restriction prior to the time when she closed on her property in January 2001. Plaintiff asserts that all of its marketing materials relied on the new configuration of the expanded development, as a result of which there would have been no need to make defendant aware of the original flag lot plan.

In October 1999, the Planning Board approved plaintiff's application for the new Beacon Woods II subdivision and memorialized its approval in a resolution adopted December 1, 1999. Because the application for the Beacon Woods II development had not alerted the Planning Board to the previously-imposed deed restriction, the 1999 resolution made no reference to it. After the final major subdivision approval was approved on February 21, 2001, and memorialized in an April 4, 2001, resolution, plaintiff closed on its purchase of the additional land, and vacated the easement that had provided that parcel with separate access to a nearby road other than Haven Way.

In 2002, when plaintiff entered into an agreement to sell Beacon Woods II to another developer, plaintiff realized that it had failed to reserve the easement that it needed to cross defendant's property and to construct Sandra Court, the proposed public roadway leading from the cul de sac to the new part of the development. When negotiations to secure defendant's consent to the easement failed, plaintiff redesigned the roadway so as to obviate the need for her agreement. In 2003, plaintiff submitted

an application to the Planning Board seeking to amend the final subdivision approval, apparently for this purpose, and defendant appeared and objected at every opportunity. Eventually, the contract between plaintiff and the new developer was terminated as a result of plaintiff's inability to resolve its dispute with defendant.

In 2006, plaintiff returned to the Planning Board and requested that it act on the 2003 application for an amendment to the final subdivision approval. Early in 2007, the Planning Board advised plaintiff that its prior approvals had expired and it rejected plaintiff's assertion that the 2003 application had been approved by default, *see N.J.S.A.* 40:55D–50b (stating that "[f]ailure of the planning board to act within [45 days after submission of a complete application] shall constitute final approval").

## II.

Plaintiff commenced its action in lieu of prerogative writs in April 2007, seeking a declaration that the 2003 application had been approved by default. Defendant, who was not initially a party but who was granted leave to intervene, filed a counterclaim. She sought a declaration that the flag lot was prohibited from being subdivided because of the earlier-imposed deed restriction, along with an order directing plaintiff to record that deed restriction.

As a result of cross-motions for summary judgment, the trial court concluded that the Planning Board could not approve the amended application because it lacked jurisdiction to eliminate the deed restriction. The court therefore entered an order declaring that all of the prior approvals for Beacon Woods II were void and permitting plaintiff to amend its complaint to seek approval of the court to eliminate the deed restriction based on changed circumstances.

Following a variety of proceedings not relevant to the issues raised on appeal, the trial court concluded that plaintiff had failed to demonstrate that it was entitled to be relieved from the deed

restriction and granted summary judgment in favor of defendant. The Appellate Division, in an unpublished opinion, reversed and remanded for further proceedings. The panel's decision was based primarily on its analysis of the precedents that establish the test governing changed circumstances in the restrictive covenant context. That analysis led the panel to conclude that the trial court had misperceived the applicable rule of law and had improperly weighed the facts in reaching its result. The Appellate Division therefore reversed the judgment of the trial court and remanded the matter for further proceedings.

We granted defendant's petition for certification, 206 *N.J.* 329, 20 *A.*3d 435 (2011), in which she raised two arguments. First, she asserts that the appellate panel erred in its analysis of the Planning Board's intent in imposing the deed restriction. In particular, she argues that because the panel believed that the Planning Board's only reason for imposing the deed restriction was its intention to prevent additional flag lots, it overlooked other reasons for the imposition of the restriction that retain validity. Second, defendant argues that the panel failed to consider the equitable arguments she had raised, pointing out that plaintiff should be barred from securing the elimination of the deed restriction because it acted with unclean hands in its efforts to seek approval for Beacon Woods II.

Plaintiff, relying on its appellate brief and oral argument before this Court, urges us to affirm the Appellate Division, not only with respect to the analysis of the law and the Planning Board's intent in originally imposing the deed restriction, but also as to plaintiff's lack of bad faith.

### III.

We begin with the observation that the parties do not dispute before this Court that the Planning Board lacked the power to eliminate the previously-imposed, but never-recorded deed restriction on the flag lot. *See Soussa v. Denville Planning Bd.,* 238 *N.J.Super.* 66, 69, 568 *A.*2d 1225 (App.Div.1990) (explaining that

planning board lacks jurisdiction to eliminate deed restriction because public's third-party beneficiary status entitles public to maintain action to enforce it). Instead, they concede that it is the courts that have the "equitable power to modify or terminate" such a restriction. *Citizens Voices Ass'n v. Collings Lakes Civic Ass'n*, 396 *N.J.Super.* 432, 446, 934 *A.2d* 669 (App.Div.2007). Therefore, this Court need only consider the standards that the trial court must apply when considering an application to eliminate a deed restriction based on changed circumstances and the manner in which the proofs should be evaluated.

■ The essential test that applies to such a claim of changed circumstances requires the applicant to demonstrate that it has become " 'impossible as a practical matter to accomplish the purpose for which' " a servitude or restrictive covenant was created. *Ibid.* (quoting *Restatement (Third) Property: Servitudes*, § 7.10(1) (2000)); *see also Leasehold Estates, Inc. v. Fulbro Holding Co.*, 47 *N.J.Super.* 534, 564–65, 136 *A.2d* 423 (App.Div. 1957) (commenting that equity will allow court to terminate restrictive covenant "which can no longer do the land intended to be benefited thereby any good.").

■ The doctrine of changed circumstances is narrowly applied and "the test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished." *Citizens Voices, supra*, 396 *N.J.Super.* at 446, 934 *A.2d* 669 (citing *Restatement (Third) Property: Servitudes, supra*, § 7.10 comment. a). That is, when a "servitude[ ] [is] terminated under this rule, it is ordinarily clear that the continuance of the servitude would serve no useful purpose and would create unnecessary harm to the owner of the servient estate." *Restatement (Third) Property: Servitudes, supra*, § 7.10 comment. a.

Although we agree with the appellate panel that the trial court misapplied these governing standards, and that as a result the matter must be remanded for further proceedings, we modify the panel's judgment because its independent factual analysis unduly

constricted the scope of the proceedings that are appropriate on remand. We so conclude for two reasons.

First, the appellate panel believed that the Planning Board only imposed the deed restriction because of a concern about further development of the flag lot. That interpretation of the record was essential to the panel's conclusion. Our review of the opinion of the trial court, however, reveals that the trial court apparently agreed with defendant's assertion that the Planning Board had additional reasons for imposing the deed restriction, but failed to identify them in concluding that plaintiff could not meet its burden. Because that aspect of the trial court's reasoning was not fully explicated, the appellate panel did not consider whether there were other reasons that retain vitality, relying instead on the single reason the panel had identified. Because the evaluation of the existence and continuing validity of such other reasons must weigh in the balance of whether the deed restriction's "purpose ... can no longer be accomplished," *Citizens Voices, supra*, 396 *N.J.Super.* at 446, 934 *A.*2d 669, the trial court should not be foreclosed on remand from further explanation of its findings and further exploration of the alternate reasons for the imposition of the deed restriction.

Second, as defendant pointed out, the elimination of a deed restriction is an exercise of the inherent equitable powers of the court. *See Leasehold Estates, supra*, 47 *N.J.Super.* at 564–65, 136 *A.*2d 423 (describing court's equitable authority). That being so, defendant's assertion that plaintiff acted with unclean hands in its applications to the Planning Board and her assertion that the allegedly changed circumstances are of plaintiff's own making should have been considered. *See, e.g., Borough of Princeton v. Bd. of Chosen Freeholders of Mercer*, 169 *N.J.* 135, 158, 777 *A.*2d 19 (2001) (observing that "[t]he essence of [the unclean hands] doctrine ... is that [a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings"); *Faustin v. Lewis*, 85 *N.J.* 507, 511, 427 *A.*2d 1105 (1981) (commenting that "a court should not grant

relief to one who is a wrongdoer with respect to the subject matter in suit").

## IV.

The judgment of the Appellate Division is affirmed as modified and the matter is remanded to the trial court for further proceedings.

*For affirmance as modified/remandment*—Chief Justice RABNER and Justices LONG, ALBIN, HOENS and PATTERSON—5.

*Not participating*—Justice LaVECCHIA and Judge WEFING (temporarily assigned)—2.