NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0765-15T3

DANIEL MATTHIES and
HEATHER MATTHIES,

 Plaintiffs-Respondents,

v.

CHARLES DIETRICH and
MARY DIETRICH,

 Defendants-Appellants.

______________________________________

 Argued December 15, 2016 – Decided August 3, 2017

 Before Judges Hoffman and O'Connor.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Monmouth County, Docket
 No. C-0146-13.

 Gary E. Fox argued the cause for appellants
 (Fox & Melofchik, LLC, attorneys; Mr. Fox,
 on the briefs).

 R.S. Gasiorowski argued the cause for
 respondents (Gasiorowski & Holobinko,
 attorneys; Mr. Gasiorowski, of counsel and
 on the brief; Cathy S. Gasiorowski, on the
 brief).

PER CURIAM
 Defendants Charles Dietrich and Mary Dietrich appeal from a

September 11, 2015 General Equity Part judgment entered in favor

of plaintiffs Daniel Matthies and Heather Matthies following a

non-jury trial.1 Among other things, the judgment mandated

defendants to remove trees from an easement. We reverse.

 I

 The salient evidence that emerged from the trial was as

follows. In 2004, defendants purchased property in Middletown

Township (municipality) in order to build a home. Later that

year, defendants obtained approval from the municipality's

Planning Board to subdivide their property into two lots, on the

condition the lots be subject to a conservation easement

(easement). Defendants agreed and, in October 2004, recorded a

"Deed to Perfect Conservation Easement" (deed restriction or

restrictive covenant). This document states:

 The [defendants], in consideration of the
 requirements of the minor subdivision
 approval referred to above, and the sum of
 One ($1.00) Dollar, the receipt of which is
 hereby acknowledged, do[] hereby give, grant
 and convey unto [the municipality], its
 successor and assigns forever, a
 conservation easement, as defined by the
 Planning and Development Regulations of the
 Township of Middletown, as being an area of
 land upon which a deed restriction is placed

1
 For ease of reference, when we use the singular "plaintiff,"
we refer to Daniel Matthies, and when we use the singular
"defendant," we refer to Charles Dietrich.
 2
 A-0765-15T3
 limiting disturbance, clearing, construction
 and other activities.

 THIS EASEMENT is dedicated to the TOWNSHIP
 OF MIDDLETOWN for any and all of the
 following purposes: (1) of protecting steep
 slopes from erosion; said easement is
 intended to be an uninterrupted and
 unobstructed easement, under, across and
 over the area described, consisting of the
 right to restrict the removal of trees and
 ground cover except for the purposes of
 removing dead or diseased trees, thinning of
 trees and growth, and (2) of maintaining
 open space in as close to its natural state
 as possible.

 The pertinent municipal regulation defines a conservation

easement in relevant part as:

 An area of land upon which a deed
 restriction is placed limiting disturbance,
 clearing, construction and other activities.
 Conservation easements are generally
 utilized to protect environmentally
 sensitive areas, including but not limited
 to . . . steep slopes.

 [Middletown Twp., N.J., Planning and Dev.
 Ordinance § 540-203.]

 At the time defendants bought their property in 2004, grass

covered the area comprising the easement. In April 2008,

defendant hired a landscaper to plant ten to twelve Leyland

Cypress trees in the easement, for the purpose of creating

privacy and to control erosion. When first planted, the trees

were six feet high. Defendant did not know if or how much grass

was removed in order to insert each tree into the ground;
 3
 A-0765-15T3
however, there was evidence grass remained between the trees.

Defendant claimed no soil was removed.

 In October 2008, plaintiffs moved into a house on an

adjacent lot. Plaintiffs were aware of the deed restriction

affecting defendants' home when they bought their own home.

Plaintiffs did not complain to defendants about the trees until

2012, when the trees began to block their view of the Verrazano

Bridge. Plaintiffs did not object to trees being in the

easement, merely that the trees were obstructing their view.

 In response to plaintiffs' complaints, defendants trimmed

the trees back, and did so on three or four occasions

thereafter. Plaintiffs offered to pay for trimming the trees or

to remove the trees and put in a slower-growing type of tree,

but defendants declined both offers.

 In 2013, defendants put their house on the market.

Defendant testified plaintiffs asked him to include in any

contract of sale a provision the buyers agreed to trim the trees

on a periodic basis. Defendants refused, because at that time

they were already under a contract to sell their home. The sale

price was $1,185,000. Plaintiffs then advised they would

consult with an attorney about taking legal action.

 Shortly thereafter, in September 2013, plaintiffs filed a

complaint. In their complaint, plaintiffs alleged defendants
 4
 A-0765-15T3
violated the terms of the deed restriction by planting the

subject trees. They demanded the trees be removed and the area

in the easement restored to its natural condition. There is

some indication in the complaint plaintiffs were alleging

defendants wrongfully allowed the trees to interfere with their

view but, just before trial, plaintiffs clarified they were not

asserting such claim. In addition, plaintiffs stated they were

seeking as a remedy either the trees be removed or defendants

ordered to maintain the trees at a certain height.

 After the complaint was filed, the buyers declined to

complete the sale. There is evidence the buyers retreated from

the contract upon learning of the conservation easement, but

there is also evidence plaintiffs advised the prospective buyers

of their intention to litigate over the trees, and the buyers

backed out of the contract to avoid being involved with any

litigation.

 Defendants filed a counterclaim. They contended plaintiffs

wrongfully and intentionally induced the buyers to renege on

their agreement to purchase defendants' home. However, at

trial, defendant conceded the house was sold approximately six

months later for $1,835,000.2 Defendants claimed $27,042 in

2
 The record informs the purchasers of defendants' house agree
to be bound by any judgment entered against them.
 5
 A-0765-15T3
damages, the money they had to pay toward the carrying charges

on their home during those six months, but it is undisputed

defendants had the benefit of living in their home during this

period.

 Plaintiff's testimony was in many respects consistent with

defendant's. However, plaintiff did add the trees were eighteen

to twenty feet in height in 2012. He also testified there is

grass on either side of and "foliage" underneath the trees.

 Michael LeMana, plaintiffs' expert arborist, testified

Leyland Cypress trees were created in the 1800s, when cross-bred

with two species of trees native to the northwestern part of the

United States. This tree has become very popular in New Jersey

over the last twenty years because it grows at a rate of three

feet per year, and can exceed fifty feet in height.

 LeMana testified Leyland Cypress trees are not commonly

used for soil erosion control, but grass is. He further stated

this kind of tree is not stable in high winds, because they have

shallow root systems and can be pulled out of the ground. The

expert did not state at what wind speeds these trees can be

uprooted. Finally, he stated when he observed the site in 2013,

he noticed "tree foliage" between the trees, which were planted

very close to each other.

 6
 A-0765-15T3
 Plaintiffs' planning expert, Peter G. Steck, testified

photographs taken in 2002 revealed the easement was a wooded

area comprised of deciduous trees. Photographs taken in 2007

demonstrated most of the trees had been removed and replaced

with grass, although some deciduous trees remained. At some

point thereafter, the grass and deciduous trees were replaced

with the Leyland Cypress trees, which were planted in two rows

in a staggered, geometric pattern.

 Although qualified as an expert in the field of planning,

over defendants' objection, Steck was permitted to provide

various opinions about Leyland Cypress trees; the court reasoned

he could do so because he had an engineering degree.3 Steck

noted this tree is not native to New Jersey, and is not

"typically" used to protect "steeper" slopes. However, Steck

noted the subject slopes are not in the "steepest" category,

being only "fifteen to twenty percent."

 Steck also opined putting "tall" trees on a steeply sloped

area may cause them to tilt in a wind storm and be partially

uprooted. He did not say how high a Leyland Cypress tree must

be in order to be vulnerable to tilting in a wind storm. He

conceded when he examined the site in 2014, he did not see any

erosion or instability of the easement and, with the passage of

3
 Defendants do not challenge this ruling on appeal.
 7
 A-0765-15T3
time since planted, the roots to the trees were deeper. At that

time, the trees were thirteen feet in height.

 Although not qualified as a legal expert, Steck provided

his legal interpretation of both the language in the deed

restriction and an ordinance referencing conservation easements.

We do not recount this testimony, as his legal opinion is not

entitled to any deference from either the trial court or from

us. "As with other legislative provisions, the meaning of an

ordinance's language is a question of law that we review de

novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005) (citing In re

Distribution of Liquid Assets, 168 N.J. 1, 11 (2001)).

 The interpretation of the language in the deed restriction

is also one to be decided by the court. It is well-established

"[e]xpert witnesses simply may not render opinions on matters

which involve a question of the law." Healy v. Fairleigh

Dickinson Univ., 287 N.J. Super. 407, 413 (App. Div.), certif.

denied, 145 N.J. 372, cert. denied, 519 U.S. 1007, 117 S. Ct.

510, 136 L. Ed. 2d 399 (1996)).

 At the conclusion of the trial, the court found the

planting of the Leyland Cypress trees violated the deed

restriction, because its purpose is to protect steep slopes from

erosion and the "testimony is uncontroverted that Leyland

Cypress trees do not prevent erosion." The court further
 8
 A-0765-15T3
determined the deed restriction "restricts the right to remove

trees and ground cover. Although defendants did not remove any

trees, they planted them. The planting of the trees removed the

ground cover, thereby violating the easement."

 The court also noted another purpose of the deed

restriction was to maintain open space in as close to its

natural state as possible. According to the court, the area in

which the easement is located is no longer maintained in its

natural state, because the Leyland Cypress tree is "not natural

to the area[, and] [t]hey are planted in a geometric pattern

which is not natural. The trees have caused the ground cover to

die. They do not prevent erosion on steep slopes."

 As a result of the deed restriction being violated, the

court ordered the trees removed, and efforts undertaken to

restore the area to its natural state, which the court

determined was "grass cover."

 II

 On appeal, defendants present the following arguments for

our consideration:

 POINT I - THE COURT BELOW ERRED IN
 CONCLUDING THAT THE EASEMENT PROHIBITS THE
 PLANTING OF TREES WITHIN ITS RESTRICTED AREA

 POINT II - PLAINTIFFS COMPLAINT SHOULD HAVE
 BEEN DISMISSED FOR FAILURE TO JOIN
 INDISPENSIBLE PARTIES
 9
 A-0765-15T3
 POINT III - THE COURT BELOW SHOULD HAVE
 DENIED PLAINTIFFS' REQUEST FOR RELIEF
 BECAUSE OF THE EQUITABLE DOCTRINE OF LACHES

 POINT IV - THE COURT BELOW ERRED IN NOT
 DENYING PLAINTIFFS RELIEF BECAUSE OF THE
 AFFIRMATIVE DEFENSE OF EQUITABLE ESTOPPEL

 POINT V - BECAUSE PLAINTIFFS HAVE COME INTO
 COURT WITH "UNCLEAN HANDS" THE COURT SHOULD
 DENY THEM THE RELIEF THEY REQUEST

 POINT VI - THE COURT BELOW ERRED IN NOT
 FINDING THAT PLAINTIFFS UNLAWFULLY
 INTERFERED WITH THE DEFENDANTS' CONTRACTUAL
 RELATIONS

 Our standard of review of a trial court's decision

following a bench trial is well-settled. The trial court's

factual findings are to be upheld if supported by sufficient

credible evidence in the record. Brunson v. Affinity Fed.

Credit Union, 199 N.J. 381, 397 (2009). However, we do not owe

the trial court such deference when we review its legal

conclusions. Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 495

(App. Div.), certif. denied, 177 N.J. 224 (2003).

 Here, the parties do not dispute the deed restriction is a

restrictive covenant. Restrictive covenants are contracts,

"subject to the interpretative doctrines of contract law which

focus on the parties' mutual purpose." Caullett v. Stanley

Stilwell & Sons, Inc., 67 N.J. Super. 111, 115 (App. Div. 1961);

see also Cooper River Plaza E., LLC v. Briad Grp., 359 N.J.
 10
 A-0765-15T3
Super. 518, 527 (App. Div. 2003) (holding a restriction in a

deed "is regarded in New Jersey as a contract, and its

enforcement constitutes a contract right"). "The polestar of

contract construction is to find the intention of the parties as

revealed by the language used by them." Homann v. Torchinsky,

296 N.J. Super. 326, 334 (App. Div.), certif. denied, 149 N.J.

141 (1997).

 If "the intent of the parties is evident from an

examination of the instrument, and the language is unambiguous,

the terms of the instrument govern." Rosen v. Keeler, 411 N.J.

Super. 439, 451 (App. Div. 2010) (citing Hyland v. Fonda,

44 N.J. Super. 180, 187 (App. Div. 1957)). The words in a

covenant are given their ordinary meaning. Citizens Voices

Ass'n v. Collings Lakes Civics Ass'n, 396 N.J. Super. 432, 443

(App. Div. 2007).

 However, if the language in a document creating an easement

is ambiguous or in dispute, a court may resort to extrinsic

evidence to inform the court's interpretation of the parties'

intent in the case of an ambiguity. Boylan v. Borough of Point

Pleasant Beach, 410 N.J. Super. 564, 569 (App. Div. 2009). "An

ambiguity in a contract exists if the terms of the contract are

susceptible to at least two reasonable alternative

interpretations." Nester v. O'Donnell, 301 N.J. Super. 198, 210
 11
 A-0765-15T3
(App. Div. 1997) (quoting Kaufman v. Provident Life and Cas.

Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992), aff'd, 993 F.2d

877 (3d Cir. 1993)).

 The relevant portions of the deed restriction state:

 The [defendants], . . . do[] hereby give,
 grant and convey unto [the municipality]
 . . . a conservation easement, as defined by
 the Planning and Development Regulations of
 the Township of Middletown.

 THIS EASEMENT is dedicated to the TOWNSHIP
 OF MIDDLETOWN for . . . the following
 purposes: (1) . . . protecting steep slopes
 from erosion; said easement is intended to
 be an uninterrupted and unobstructed
 easement, under, across and over the area
 described, consisting of the right to
 restrict the removal of trees and ground
 cover except for the purposes of removing
 dead or diseased trees, thinning of trees
 and growth, and (2) of maintaining open
 space in as close to its natural state as
 possible.

 Simply stated, the purpose of the deed restriction is to

protect steep slopes in the easement area from erosion, and to

maintain the open space in the easement in as close to its

natural state as possible. The deed restriction includes the

right to limit the removal of trees and ground cover, except as

permitted by the language in the deed restriction.

 The court found the planting of the Leyland Cypress trees

was a violation of the deed restriction, because this kind of

tree does not prevent erosion. However, this finding is not
 12
 A-0765-15T3
supported by the evidence. LeMana merely stated this kind of

tree is not commonly used as a form of soil erosion control, not

that this tree cannot prevent erosion. He did state at high

winds this tree might be uprooted, but he failed to provide the

wind speed that would cause a tree of this kind to be dislodged

from the ground, and did not state how likely and often such

speed would occur.

 When the trees were inspected by Steck in 2014, they had

been in place for six years, and there was no sign of soil

disruption or erosion. Steck opined a tall Leyland Cypress on a

steep slope may tilt in a wind storm and be partially uprooted.

But he, too, failed to clarify how tall the tree, strong the

wind, and steep the slope must be to cause a tree of this kind

to tilt and upend. On balance, we are not persuaded the

evidence supports the finding the planting of the Leyland

Cypress trees violated the deed restriction. In addition, the

court did not provide a reason why all of the trees should be

removed and those areas where the trees had stood replaced with

grass, when there was no evidence the integrity of the slope was

being compromised.

 The court noted the deed restriction limits the right to

remove trees and ground cover. Although the court found

 13
 A-0765-15T3
defendants did not remove any trees, it did find they violated

the deed restriction by removing grass from the easement.

 As previously stated, the words in a covenant are given

their ordinary meaning. Citizens Voices Ass'n, supra, 396 N.J.

Super. at 443. Webster's II New College Dictionary defines

"ground cover" as:

 1. Low-growing plants that form a dense,
 extensive growth and tend to prevent weeds
 and soil erosion. 2. Small plants other than
 saplings, such as mosses and undershrubs,
 growing on a forest floor : UNDERGROWTH.

 [Webster's II New College Dictionary 502
 (3rd ed. 2005).]

 The applicability of the first definition of ground cover

is questionable, because it is common knowledge grass does not

tend to prevent weeds. The second definition is inapplicable.

But more important, there is no conclusive evidence grass was

removed. Defendant did not know what happened to the grass when

his landscaper inserted the trees into the ground, although

defendant was able to say the soil was not removed. Plaintiff

testified there is grass on either side of and foliage

underneath the trees. When LeMana visited the easement in 2013,

he observed "foliage" between the trees. In the final analysis,

there is insufficient evidence defendants removed ground cover

from the easement.

 14
 A-0765-15T3
 The court observed another purpose of the deed restriction

is to maintain open space in as close to its natural state as

possible. The court determined planting Leyland Cypress trees

violated the deed restriction because this tree is not native to

the area and was planted in a geometric pattern, which is not

found in nature.

 The term "open space" is defined in the Municipal Land Use

Law as follows:

 [A]ny parcel or area of land or water
 essentially unimproved and set aside,
 dedicated, designated or reserved for public
 or private use or enjoyment or for the use
 and enjoyment of owners and occupants of
 land adjoining or neighboring such open
 space; provided that such areas may be
 improved with only those buildings,
 structures, streets and offstreet parking
 and other improvements that are designed to
 be incidental to the natural openness of the
 land or support its use for recreation and
 conservation purposes.

 [N.J.S.A. 40:55D-5.]

There is no evidence the planting of the subject trees in this

easement is inconsistent with the definition of "open space."

 Neither the Municipal Land Use Law nor the deed restriction

defines the term "natural." Thus, we resort to the dictionary

to ascertain its meaning. Webster's II New College Dictionary

defines the term "natural" as "present in or produced by

 15
 A-0765-15T3
nature."4 Webster's II New College Dictionary 746 (3rd ed.

2005).

 The trees that were planted in the easement are present in

and produced in nature. The fact they are not native to the

area or were planted in a certain pattern is irrelevant. The

second purpose of the easement is to maintain open space in as

close to its natural state as possible. A "natural" state is

merely one that is present in or produced by nature. Thus, an

easement that contains Leyland Cypress trees is in a natural

state.

 To the extent it was the court's reasoning the deed

restriction compelled the easement area be returned to a state

before touched by human hand, the remedy ordered - to remove the

current trees and maintain only grass throughout the entire

easement - would not achieve the desired result. The grass was

deliberately put in place by some entity or individual after the

removal of the deciduous trees. It is not known if the

deciduous trees came into existence as the result of human

intervention, as that question was not explored, or what existed

before the latter trees. But, at the least, if the trial

4
 There are other definitions of "natural," but none is
applicable to the issues before us.
 16
 A-0765-15T3
court's reasoning governed, the correct remedy would not have

been to order that only grass be maintained in the easement.

 In light of our disposition, we need not address

defendants' remaining arguments.

 Reversed.

 17
 A-0765-15T3